# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EARNEST LEWIS,** | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]   CV-04-BE-2765-S |
| | ] |
| **PRIORITY BUILDING SERVICE,** | ] |
| **INC., et al.,** | ] |
| | ] |
| Defendants. | ] |
| | ] |

## MEMORANDUM OPINION

## I. INTRODUCTION AND FACTUAL BACKGROUND

This case is currently before the court on a motion for summary judgment and supporting brief (doc #12) filed by defendants Priority Building Service ("PBS") and Larry Hall. Plaintiff Earnest Lewis filed an objection to the motion for summary judgment (doc. #14) and submitted evidentiary materials in opposition to the motion for summary judgment (doc. #15).

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that the defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part.

Plaintiff filed suit in this court asserting federal claims under The Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, ("Title VII"). Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

1

Counts One and Two of the plaintiff's complaint are for hostile environment sexual harassment and tangible job action sexual harassment based on allegations of constructive discharge.  However, the court disregards these labels, construing both counts as ones for sexual harassment in violation of Title VII.  *See Hulsey v. Pride Restaurants, LLC.,* 367 F.3d 1238, 1244 n. 3 *(*11th Cir. 2004) (abolishing a distinction between hostile work environment and quid pro quo claims of sexual harassment).

Lewis' complaint also contains claims under Alabama law for invasion of privacy, outrage, and negligent and/or wanton hiring, retention, training, and supervision.  The court has jurisdiction of this case pursuant to its federal question jurisdiction under 28 U.S.C. §1331 and has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

As a preliminary matter, the court notes that the defendants failed to follow the instructions delineated in Exhibit A to the November 16, 2004 scheduling order (doc. # 9). Specifically, the statement of facts contained in the defendants' motion for summary judgment is not supported by specific reference to evidentiary material.  Furthermore, because the defendants did not file a reply brief, the additional material facts set forth in the plaintiff's brief in opposition to the motion for summary judgment are deemed admitted for purposes of summary judgment.[1]

Plaintiff Earnest Lewis began his employment with defendant PBS on February 9, 2003.[2] Lewis was hired as a custodial employee and was supervised by defendant Larry Hall.[3]  Hall is PBS' highest ranking employee in its Birmingham office and is responsible for the management

---

[1] Exhibit A to Scheduling Order, Summary Judgment Submission, Part a.

[2] *See* Doc. # 14, ¶ 1.

[3] *Id.* at ¶ 2.

of all its Birmingham employees.[4]  Hall reports directly to PBS president and owner, Oscar Blair.[5]

Lewis alleges that Hall began making sexual overtures toward him in March 2003 that consisted of making favorable comments about his appearance and penis size, offering Lewis lodging and volunteering to "take care" of him, and attempting to walk-in on Lewis while he was using the restroom.[6]  According to the plaintiff, the above-referenced conduct occurred approximately every three weeks.[7]

In further support of his sexual harassment claim, plaintiff directs the court's attention to Hall's alleged sexual misconduct towards employee Larry Myles.  Myles accuses Hall of repeatedly making comments about the size of his penis, attempting to touch and actually touching his penis, offering Myles money to see his penis, repeated requests for oral sex, and threatening to catch Myles in one of the empty offices and "take him."[8]  Myles told Lewis about Hall's sexual advances.[9]  Although the record does not indicate when Myles disclosed this information to Lewis, plaintiff indicates that his knowledge about Myles' alleged harassment influenced his perception of his work environment as being sexually hostile.[10]

---

[4] Dep. of Oscar Blair, p. 12; Dep. of Larry Hall, p. 11-12.

[5] *Id.*

[6] Pl's Dep., p. 18-22.

[7] *Id.*, p. 23.

[8] Affidavit of Larry Myles, ¶ 12.

[9] *Id.*, ¶ 12; Plaintiff's Affidavit ¶ 2.

[10] Plaintiff's Affidavit ¶ 2.

On August 14, 2003, Lewis alleges that he was constructively discharged when he refused Hall's request for oral sex in response to the plaintiff's request to Hall for a payroll advance. According to the plaintiff, Hall looked at the zipper of Lewis' pants while making a face implying that he was asking for oral sex.[11] Based on Hall's conduct, Lewis argues that he felt he either had to give into the request for oral sex or leave his job.[12] The defendant contends that plaintiff was terminated because he abandoned his employment.

PBS' sexual harassment policy provides that complaints of sexual harassment should be promptly reported "to his or her manager, project manager, Executive Housekeeper. If the employee is uncomfortable in reporting the incident to his or her manager, the employee should report the incident directly to corporate officials."[13] However, Lewis contends that he attended an employee meeting and was told that all sexual harassment complaints should be made to Hall because he was in charge of the Birmingham office.[14]

A copy of the policy is posted in the employee break-room, but Lewis claims that the posting was obscured by other postings[15] and that the announcement did not contain the appropriate contact information for owner, Oscar Blair. Plaintiff never lodged a sexual harassment complaint with either Hall, Blair, or any other PBS employee.[16]

---

[11] Pl's Dep., p. 28-30.

[12] *Id.*, p. 28-30.

[13] *See* Doc. # 15, *Ex.* 8.

[14] Pl's Dep., p. 35.

[15] *Id.*, p. 34, 36.

[16] *Id.*, p. 34.

## II. STANDARD OF REVIEW AND LEGAL FINDINGS

Summary judgment is an integral part of the Federal Rules of Civil procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56. Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52.

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that the defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part. The court specifically finds as follows:

**(1) Sexual Harassment**

The court applies the same legal standards for evaluating same-sex and opposite sex harassment claims. *See Oncale v. Sunflower Offshore Servs. Inc.*, 523 U.S. 75, 82 (1998) (holding that same-sex harassment claims are within the purview of Title VII and applying the same legal standards applicable to opposite sex harassment claims).

To establish a sexual harassment claim, Lewis must show: (1) that he belongs to a protected group; (2) that he has been the subject of unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment "was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatory and abusive working environment;" and (5) that the employer is responsible for the harassment under either a

theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The parties vehemently disagree about whether the record contains genuine factual disputes regarding whether a jury could reasonably determine that the alleged harassment was so severe or pervasive so as to alter the conditions of Lewis' working environment and whether civil liability can be imputed to PBS based on Hall's alleged conduct. The court concludes that genuine issues of material fact on both issues preclude the entry of summary judgment.

The un-controverted evidence establishes that Lewis subjectively found Hall's behavior unwelcome and that the plaintiff told Hall on several occasions to stop.[17] The undisputed evidence also establishes that, from March 2003 until August 14, 2003, Hall made various comments about Lewis' appearance, penis size, offered to take care of Lewis, and attempted to walk-in on plaintiff while he was using the bathroom.[18] The above-referenced conduct occurred approximately every three weeks during the six months of the plaintiff's employment.

Evaluating the evidence within the appropriate standard of review, the court finds a genuine issue of material fact regarding whether Lewis subjectively perceived Hall's conduct as abusive or sexually harassing and whether Hall's conduct was so severe and/or pervasive as to be objectively hostile and abusive and thus, to materially alter the terms and conditions of his employment.

The court also concludes that genuine issues of material fact exist regarding whether PBS is legally responsible for Hall's alleged harassment. No one disputes that Hall is the supervisory

---

[17]Pl's Dep., p. 34. Pl's Affidavit ¶ 3.

[18]Pl's Dep., p. 18-22.

employee responsible for the management of PBS' Birmingham employees.  Similarly, no one disputes that Lewis did not report  Hall's alleged harassment to any PBS employee.  PBS argues that it is not vicariously liable for Hall's alleged conduct because of the plaintiff's failure to report the alleged harassment in accordance with its sexual harassment policy and that it is not strictly liable for Hall's conduct given the lack of evidence of a tangible employment action, in this case, a constructive discharge.

The parties argue about whether a constructive discharge can form the basis of a tangible employment action,  thus, triggering automatic vicarious liability for the employer.  When an employee suffers a "tangible employment action" at the hands of his supervisor (or successively higher authority) that is the result of prohibited discrimination, the employer is automatically vicariously liable on the premise that the supervisor acted within the scope of his agency.  *See Walton v. Johnson & Johnson Servs. Inc.,* 347 F.3d 1272, 1280 (11th Cir. 2003).  A tangible employment action occurs whenever "a significant change in employment status happens such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. Inc., v. Ellerth*, 524 U.S. 742, 761 (1998).  Consequently, no affirmative defense is available when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

At this stage of the litigation, the court does not address the issue of first impression in the Eleventh Circuit regarding whether a constructive discharge is a tangible employment action subjecting an employer to strict liability for the alleged harassment by its supervisory employees. The court does not address this issue, about which considerable disagreement exists among the

circuits,[19] because of genuine issues of material facts concerning whether Hall's actions constituted constructive discharge. Simply put, regardless of the ultimate legal determination of whether a constructive discharge is a tangible employment action, the factual dispute negates the need to make that legal determination at this stage of the litigation.

Assuming for purposes of the motion for summary judgment that a claim of constructive discharge does not qualify to impose automatic vicarious liability, the court must next determine whether PBS' affirmative defense warrants the entry of summary judgment. Specifically, when no tangible employment action is taken, a defending employer may raise an affirmative defense to liability which requires proof (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Walton v. Johnson & Johnson Servs., Inc.,* 347 F.3d 1272, 1286 (11th Cir. 2003).

Lewis' un-controverted assertions that (1) he did not receive a copy of the employee handbook containing the sexual harassment policy; (2) the only copy of the sexual harassment policy on the actual work-site was obscured by other postings; and (3) he was told that he could only report sexual harassment complaints directly to Hall, the alleged harasser, create genuine issues of material fact about whether PBS exercised reasonable care to prevent sexual harassment and whether Lewis unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *See Walton v. Johnson & Johnson Servs., Inc.,* 347 F.3d

---

[19]*Compare Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 294 (2d Cir. 1999) (holding that constructive discharge does not constitute a tangible employment action); *Reed v. MBNA*, 333 F.3d 27, 33 (1st Cir. 2003) (same) *with Jackson v. Dep't of Educ.,* 272 F.3d 1020, 1026 (8th Cir. 2001).

1272, 1286 (11th Cir. 2003).  Based on the foregoing, the defendants' motion for summary judgment on the Title VII sexual harassment claims is due to be DENIED.

**(2) Invasion of Privacy**

Genuine issues of material fact also preclude the entry of summary judgment on the state law invasion of privacy claim.  Under Alabama law, invasion of privacy is defined as "the wrongful intrusion into one's private activities in such a manner as either to outrage a person of ordinary sensibilities or to cause such a person mental suffering, shame or humiliation."  *See Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418 (M.D. Ala. 1998) (citing *Busby v. Truswal Sys. Corp.,* 551 So. 2d 322 (Ala. 1989)).

In this case, Lewis alleges that Hall, beginning in March 2003, made unwanted and unsolicited comments about his appearance and penis size, offered Lewis lodging and volunteered to take care of him, and attempted to walk-in on Lewis while he was using the bathroom.  Assuming the truth of these allegations as it must at this stage of the litigation, the court finds that a jury could reasonably conclude that Hall wrongfully intruded upon the plaintiff's "private activities in such a manner as either to outrage a person of ordinary sensibilities or to cause such a person mental suffering, shame, or humiliation." *See Phillips v. Smalley Maintenance Servs.*, 435 So. 2d 705, 711 (Ala. 1983) (recognizing that solicitations and inquiries for sex could constitute an invasion of privacy).  Furthermore, based on Hall's conduct and the factual issues relating to PBS' implementation of its sexual harassment policy, a jury could reasonably impute liability to PBS as his employer.  *See Potts v. BE&K Construction Co.,* 604 So. 2d 368, 400 (Ala. 1992) (outlining the requirements for imputing liability to an employer based on the intentional torts committed by an employee).  Accordingly, the defendants' motion

for summary judgment on the state law invasion of privacy claim is due to be DENIED.

### (3) Negligent and/or Wanton Hiring, Retention, Training and Supervision

The court also concludes that the defendants' motion for summary judgment on the plaintiffs' negligent and/or wanton hiring, retention, training, and supervision claim is also due to be denied. Although the defendants' submissions indicate that they are moving for summary judgment on all of the plaintiff's claims, the motion does not address Lewis' allegations of negligent and/or wanton hiring and supervision.

Because the defendants' motion is absolutely silent on the above-referenced count, the court concludes that they have not carried their initial burden of production. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (holding that "The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment") (internal citations and quotations omitted). Accordingly, the motion for summary judgment on the negligent and/or wanton hiring and supervision claim is due to be DENIED.

### (4) Outrage

However, the court concludes that the plaintiff has *not* adduced sufficient evidence to survive a motion for summary judgment on his outrage claim. The tort of outrage requires extreme and outrageous conduct by a person who intentionally or recklessly causes severe emotional distress to another. *Nipper v. Variety Wholesalers, Inc.*, 638 So. 2d 778, 780-781 (Ala. 1994) (citing *American Road Service Co. v. Inmon,* 394 So. 2d 361 (Ala. 1980)). The plaintiff must produce sufficient evidence to show that the defendants' conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be

regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon,* 394 So. 2d at 365.  *See Also*, *Fitch v. Voit,* 624 So.2d 542 (Ala. 1993).

The Alabama Supreme Court has also declined to impose liability for outrage except in the most egregious cases and has recognized the tort of outrage in three areas: (1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment. *See Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041 (Ala.1993).  While Hall's comments about the plaintiff's penis size, offering Lewis lodging and volunteering to "take care" of him, and attempting to walk-in on Lewis while plaintiff was using the restroom, can certainly be described as offensive, disgusting and repulsive, these incidents do not rise to the level of egregious conduct to constitute the tort of outrage.  *Cf., Turner v. Hayes*, 719 So. 2d 1184, 1186-1187 (Ala. Civ. App. 1997) (holding that incidents of touching, including poking female employees under their armpits near their breasts, putting hands on a female employee's waist, combined with comments and attempts to look up the employee's skirt did not establish outrageous conduct), *rev'd on other grounds by Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190 (Ala. 1998); *Saville v. Houston County Healthcare Auth.*, 852 F.Supp. 1512 (M.D. Ala.1994) (granting summary judgment on outrageous conduct claim where incidents including poking a female employee in the rib cage and touching or grabbing the employee's buttocks).

Furthermore, the court observes that the plaintiff has not cited, and the court cannot find, a case where the harasser's status as a member of higher-level management was a determinative factor that courts have found to be persuasive in evaluating whether the alleged conduct was sufficiently egregious.   Based on the foregoing, the court concludes that the motion for summary

11

judgment is due to be GRANTED on the plaintiff's outrage claim.

A separate order will be entered simultaneously with this Memorandum Opinion.

DONE and ORDERED this 25th day of July, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE